ANILAS, INC., APPELLANT, *v.* KERN ET AL., APPELLEES.

[Cite as Anilas, Inc. *v.* Kern (1986), 28 Ohio St. 3d 165.]

(No. 86-152—Decided December 26, 1986.)

(Rehearing granted — January 28, 1987.)

*Knepper, White, Arter & Hadden, R. Douglas Wrightsel* and *William A. Adams,* for appellant.

*Weasel & Brimley Co., L.P.A.,* and *John F. Kostyo,* for appellees.

*Per Curiam.* The sole issue presented in this appeal is whether the exercise of jurisdiction over the appellee Elvira Kern by the District Court of Saline, Kansas was proper under the Due Process Clause of the United States Constitution. As the United States Supreme Court recently stated: "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' * * * By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' * * * the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit' * * *." *Burger King Corp.* v. *Rudzewicz* (1985), 471 U.S. 462, 471-472 (citations and footnote omitted).

In determining whether a state court may properly exercise personal jurisdiction over an out-of-state defendant, the primary question is whether the defendant purposefully established "minimum contacts" within the forum state, *International Shoe Co.* v. *Washington* (1945), 326 U.S. 310, at 316, and "purposefully avail[ed] itself of the privilege of conducting activities within the forum state." *Hanson* v. *Denckla* (1958), 357 U.S. 235, 253. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, * * * or of the 'unilateral activity of another party or a third person[.]' " *Burger King Corp., supra,* at 475 (citations omitted.)

In the instant case, the record reveals that all negotiations prior to the

signing of the lease agreement were conducted between Dan Kern, as the president of D.K.E., and representatives of Anilas. Elvira Kern's only apparent participation in the formation or performance of the lease occurred when she was called into the meeting between her husband and an Anilas representative and was told by her husband to sign the lease as the coguarantor thereof. After signing the lease, Elvira Kern apparently had no further dealings with Anilas until the legal proceedings concerning D.K.E.'s default on the lease were instituted.

Appellant Anilas emphasizes the presence of a provision in the lease agreement, which provided:

"9.  If Lessee shall fail to pay any rental as herein provided when the same is due and payable, or if Lessee shall default in performance or shall fail to observe, keep or perform any other provision of this Lease required to be observed, kept or performed by Lessee, then in such event, Lessor at its sole option, and in addition to and without prejudice to any other remedies hereunder, may terminate this Lease and/or enter upon Lessee's premises and without any court order or other process of law may repossess and remove said property either with or without notice to Lessee. *Any such default in performance shall be deemed to be a breach of this contract, and the breach shall be deemed to be made at Salina, Kansas.* Any such repossession shall not constitute a termination of this Lease unless Lessor so notifies Lessee in writing, and Lessor has the right, at its sole option * * * [to] * * *." (Emphasis added.)

Anilas contends essentially that the foregoing provision should be interpreted as a choice of forum provision and that by signing the lease, Elvira Kern expressly consented to the jurisdiction of the Kansas court. We do not find Anilas' argument to be persuasive.

First, we note that an "* * * individual's contract with an out-of-state party [does not] *alone* * * * automatically establish sufficient minimum contacts in the other party's home forum * * *." *Burger King Corp., supra,* at 478. Rather, "* * * [i]t is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479.

As discussed above, Elvira Kern had *no* prior negotiations with Anilas, and the record reveals that Elvira apparently contemplated *only* that she would serve as the co-guarantor of a lease agreement—*not* that she would have any future business dealings with Anilas or that she would personally participate in the performance of the lease. Further, the provision alleged by Anilas to be a "choice of forum" clause cannot clearly be construed as such. The provision does not expressly state that the lessee or the guarantors of the lease agree to be subject to the jurisdiction of the Kansas courts, but it merely provides that any breach will be "deemed to be made at Salina, Kansas." While such a provision may, in some cases, be con-

sidered a "choice of law" clause that will often control in a determination regarding the applicability of the chosen state's law to a dispute over the agreement, see *Schulke Radio Productions, Ltd.* v. *Midwestern Broadcasting Co.* (1983), 6 Ohio St. 3d 436, such clauses have only a limited effect as one of many factors that must be weighed in determining whether a defendant has "purposefully established minimum contacts" within a particular forum.

In this case, the provision in question stands alone as the *only* factor which would support Anilas' view that Elvira Kern purposefully established minimum contacts within the state of Kansas. We find this lone factor insufficient to show that minimum contacts existed in this case. In reaching this decision, we also note that Anilas' "* * * interest in obtaining convenient and effective relief," *World-Wide Volkswagen Corp.* v. *Woodson* (1980), 444 U.S. 286, 292, apparently was not the motivation behind its pursuit of the action in the Kansas district court by which it obtained a default judgment against Elvira Kern. For reasons known only to Anilas, it first brought suit in Ohio against Dan Kern and D.K.E., ultimately obtaining a judgment against the defendants therein. Anilas then filed suit for fraudulent conveyance, again in Ohio, against Elvira Kern. While this action was pending, Anilas filed the action in Kansas by which it obtained a default judgment. Finally, Anilas sought enforcement of this default judgment against Elvira Kern in the pending fraudulent conveyance action in Ohio. Based on this scenario, it appears that Elvira Kern's burden of defending an action in Kansas was significantly greater than any burden Anilas might have faced if it had pursued all of its actions against Elvira Kern in Ohio.

Based upon all of the foregoing, we hold that Elvira Kern did not "purposefully establish minimum contacts" within the state of Kansas, the District Court of Saline did not have personal jurisdiction over Elvira Kern, and the default judgment granted to Anilas by the Kansas district court was obtained in violation of Elvira Kern's right to due process under the United States Constitution.

Accordingly, the judgment of the court of appeals is affirmed and the cause is remanded to the common pleas court for further proceedings consistent with this opinion.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER and C. BROWN, JJ., concur.

HOLMES, DOUGLAS and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. Anilas, a Kansas corporation, entered into an agreement with D.K.E., Inc., an Ohio corporation, to lease construction equipment. The lease provided in pertinent part that: (1) the equipment

would be located in Perrysburg, Ohio; (2) that D.K.E. would make sixty equal monthly payments to Anilas at its Kansas headquarters, and (3) that any default in performance "shall be deemed to be a breach of this contract, and the breach shall be deemed to be made in Salina, Kansas." Defendant-appellee Elvira Kern, wife of D.K.E. President, Dan Kern, signed the lease both as a guarantor and in her position as Secretary of D.K.E.

D.K.E. defaulted on the loan. Anilas filed suit for breach of contract against Elvira Kern in Salina, Kansas and, after proper service of process, obtained a default judgment against her. Anilas then brought this action in Wood County, Ohio to enforce the Kansas court's default judgment against Elvira Kern. The issue before the court in this appeal is whether the Kansas judgment is entitled to full faith and credit in an Ohio court.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' " *Burger King Corp.* v. *Rudzewicz* (1985), 471 U.S. 462, 471-472; *Internatl. Shoe Co.* v. *Washington* (1945), 326 U.S. 310, 319.

"* * * [D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Internatl. Shoe Co., supra,* at 316.

The majority holds that Mrs. Kern did not have sufficient contacts with Kansas. I disagree. "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." *McGee* v. *Internatl. Life Ins. Co.* (1957), 355 U.S. 220, at 223. In the present case, Mrs. Kern signed a contract with a Kansas corporation which required regular payments to be sent to Kansas.

In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer* v. *Heitner* (1977), 433 U.S. 186, 204.

"Thus where the defendant 'deliberately' has engaged in significant activities within a state, *Keeton* v. *Hustler Magazine, Inc., supra* [465 U.S.], at 781, or has created 'continuing obligations' between himself and residents of the forum, *Travelers Health Assn.* v. *Virginia,* 339 U.S., at 648, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

"Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State." (Emphasis *sic.*) *Burger King Corp., supra,* at 475-476.

The majority places great weight on Mrs. Kern's lack of involvement

in the actual negotiation of the contract. However, while she did not personally participate in the actual negotiation process, she was an officer of the corporation and signed the contract as *both* an officer and a guarantor. Therefore, her individual lack of involvement in the contract negotiations should not be controlling. Rather, the role of the corporation as an entity in the formation and execution of this contract is at issue.

Various courts have consistently held that *foreseeability* is one of the primary factors to be considered in determining whether there are sufficient minimum contacts. "[T]he foreseeability that is critical to due process analysis * * * is that the defendant's conduct and connections with the forum State are such that *he should reasonably anticipate being haled into court there.*" (Emphasis added.) *World-Wide Volkswagen Corp.* v. *Woodson* (1980), 444 U.S. 286, 297.

The contract at issue provided that any breach would be deemed to be made in Kansas. This forum selection clause made suit in Kansas foreseeable. Forum selection clauses are enforceable under the same restrictions as choice of law clauses. *United Standard Mgmt. Corp.* v. *Mahoning Valley Solar Resources, Inc.* (1984), 16 Ohio App. 3d 476, 478. Choice of law clauses are enforceable in Ohio. *Schulke Radio Productions, Ltd.* v. *Midwestern Broadcasting Co.* (1983), 6 Ohio St. 3d 436.

"The law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties." *Id.* at syllabus. Thus, it is clear that Ohio has *no unilateral restrictions against choice of law or forum selection clauses in contracts.*

In *Burger King Corp., supra,* the court held Florida jurisdiction did not offend due process where a Michigan resident contracted with Burger King, a Florida-based corporation, for a Burger King franchise. The contract, which was negotiated with both Burger King's Florida headquarters and its Michigan district office, required the franchise owner to dispense Burger King standardized products and make monthly payments to Burger King's Florida headquarters. The court stated at 487 that:

"* * * Because Rudzewicz established a substantial and continuing relationship with Burger King's Miami headquarters, received fair notice from the contract documents and the course of dealing that he might be subject to suit in Florida, and has failed to demonstrate how jurisdiction in that forum would otherwise be fundamentally unfair, we conclude that the District Court's exercise of jurisdiction pursuant to Florida Stat. § 48.193(1)(g) (Supp. 1984) did not offend due process."

Similar reasoning would support Kansas jurisdiction here. The con-

tract in the instant case was for business equipment and was signed in Ohio between two businesses. It provided that regular payments would be made in Kansas and specifically stated that any breach would be deemed to be made in Kansas. Thus, it was foreseeable that a suit for breach of contract could be brought in Kansas.

Elvira Kern purposely established minimum contacts with Kansas when she signed a contract which created ongoing obligations between the Kansas corporation and the Ohio corporation in which she was an officer. The contract clearly provided that payments would be made to Kansas and that any breach would be deemed to have occurred in Kansas. Thus, it was obviously foreseeable that she would have to defend a suit in Kansas if the agreement was breached. There is no claim here of inequality in bargaining power, fraud or duress. Finally, Mrs. Kern has made *no* showing of unusual hardship or given *any* compelling reason why it would create more hardship for her to defend a suit in Kansas than Anilas would incur in bringing a suit in Ohio.

Thus, I would sustain the position of the trial court and reverse the posture of the court of appeals. Accordingly, I respectfully dissent.

HOLMES and DOUGLAS, JJ., concur in the foregoing dissenting opinion.