**AKZO SALT, INC., Appellant,**

v.

**OHIO BUREAU OF EMPLOYMENT SERVICES et al., Appellees.**

[Cite as *Akzo Salt, Inc. v. Ohio Bur. of Emp. Serv.* (1995), 107 Ohio App.3d 567.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67221.

Decided April 27, 1995.

*Willacy & LoPresti, Timothy A. Marcovy* and *Scott M. Young,* for appellant.

*Betty D. Montgomery,* Attorney General and *Betsey Nims Friedman,* Assistant Attorney General; *Shapiro, Turoff & Belkin, Alan Belkin* and *Evelyn D. Moore,* for appellees.

O'DONNELL, Judge.

Appellees are members of Local 436, International Brotherhood of Teamsters and employees of Akzo Salt, Inc., the appellant, who, in this appeal, challenges their entitlement to receive unemployment benefits. On April 17, 1991, Akzo announced that the Cleveland Salt Mine would be closed from May 6, 1991 until June 2, 1991 due to economic problems and that, pursuant to terms of the collective bargaining agreement between Akzo and Local 436, all unused 1991–1992 vacation pay would be paid at the time of layoff. Specifically, the agreement states:

"6. In the event an employee * * * is laid off during the year and is entitled to vacation pay under this Article, such vacation pay shall be paid to him at the time of such * * * layoff."

Akzo then closed the plant on May 6, 1991 and paid all unused vacation pay in lump sums. We note that this plant closing created three categories of Akzo employees—those who had vacation prior to, during, and after the closing; since Akzo does not contest the right of those who had already taken their vacation to receive unemployment benefits, we are only concerned in this appeal with the employees in the latter two categories, who, upon receipt of the layoff notices, filed individual claims for unemployment benefits with the Administrator of the Ohio Bureau of Employment Services and received a determination of entitlement to benefits. Akzo appealed the Administrator's determination and on April 6, 1992 the Unemployment Compensation Board of Review affirmed appellees' entitlement to benefits, but modified the Administrator's decision, finding that vacation pay received by employees for vacations scheduled during the layoff period should be deducted from their unemployment benefits.

Akzo pursued appeal to common pleas court and the able trial judge entered the following order on April 1, 1994:

"Appellant's appeal from the decision of the Unemployment Compensation Board of Review, granting unemployment compensation to claimants who were separated from Akzo Salt, Inc., due to lack of work, is denied."

Akzo now appeals the trial court's ruling to this court and has assigned as error that the decision of the trial court is unlawful, unreasonable, and against the manifest weight of the evidence.

■ We begin our consideration of this matter by defining the standard of review for an administrative appeal from a decision of the common pleas court. In this instance, while the trial court's duty is to determine whether the decision appealed from is unlawful, unreasonable or against the manifest weight of the evidence, our review is conducted to determine if the court abused its discretion in entering its judgment. *Prihoda v. Ohio Bur. of Emp. Serv.* (May 16, 1991), Cuyahoga App. No. 58542, unreported, 1991 WL 81480.

■ We conclude, therefore, that the appropriate standard of appellate review for an administrative appeal from a decision of the common pleas court is to ascertain if the trial court correctly determined whether the decision was unlawful, unreasonable or against the manifest weight of the evidence and whether the court abused its discretion in entering its judgment.

We begin our consideration of this appeal by setting forth the relative positions of the parties.

■ Akzo does not believe the appellees are entitled to unemployment benefits because each received a lump sum distribution of vacation pay at the beginning of the layoff period. Pursuant to R.C. 4141.01(H) and the holding of *Nunamaker v. U.S. Steel Corp.* (1965), 2 Ohio St.2d 55, 31 O.O.2d 47, 206 N.E.2d 206, Akzo concludes that the lump sum vacation pay constitutes "remuneration" which precludes appellees' receipt of benefits.

Appellees, on the other hand, first suggest that the Supreme Court holding in *Nunamaker, supra,* is not controlling because it interprets an obsolete statute, and then contend that the trial judge correctly dismissed Akzo's appeal because the board of review correctly determined benefit entitlement with appropriate reductions for appellees who were on scheduled vacations during the period of the layoff.

We begin our review and analysis of this case by considering the statutes which deal with eligibility for unemployment compensation.

R.C. 4141.29 provides in relevant part:

"Each eligible individual shall receive benefits as compensation for loss of remuneration due to *involuntary * * * unemployment * * *.* (Emphasis added.)

Further, R.C. 4141.01 contains the following two paragraphs:

"M. An individual is 'totally unemployed' in any week during which he performs no services and with respect to such week no remuneration is payable to him.

"N. An individual is 'partially unemployed' in any week if, due to involuntary loss of work, the total remuneration payable to him for such week is less than his weekly benefit amount."

Thus, the statutory scheme established by the legislature for an individual to receive an unemployment benefit consists of a two-part determination on eligibility, both involuntary unemployment and either no remuneration or remuneration less than weekly wage. In this case, all parties agree that appellees were involuntarily unemployed and performed no services during the layoff. The parties here disagree on whether appellees received remuneration during the layoff, and this becomes the central issue for our determination. Akzo claims that the lump sum vacation pay received by appellees constitutes remuneration to them, cites *Nunamaker v. United States Steel Corp.,* in support of its position, and concludes that appellees should not be entitled to receive benefits.

Paragraph two of the syllabus in *Nunamaker, supra,* states:

"An employee *who voluntarily elected to receive* and accepted vacation pay, received 'remuneration', was not 'totally unemployed,' and, therefore, was ineligible for unemployment benefits pursuant to Sections 4141.01 * * *." (Emphasis added.)

The court went on to stress that "each was paid remuneration with respect to such week in the form of vacation pay as a result of his *unilateral and voluntary election."* (Emphasis added.) *Id.* at 57, 31 O.O.2d at 48, 206 N.E.2d at 208.

Our review demonstrates that the facts in *Nunamaker, supra,* refer to the voluntary election by employees to receive vacation pay, which is a different circumstance than is presented in this case. Here, we find that pursuant to the collective bargaining agreement, appellees were entitled to select vacation dates by seniority subject to Akzo's approval, and each employee had an expectancy to receive compensation for the selected time of vacation. By closing the plant, Akzo compelled all those who had planned vacation after June 2, 1991 to take their vacation during the time of the layoff and to be paid at that time. This was contrary to the employees' choice. Akzo, however, views the action of accelerating the vacation pay to the layoff period as defeating the otherwise lawful claim to unemployment benefits for these appellees because Akzo considers it to be remuneration received by them.

The record reveals that the Unemployment Compensation Board determined, presumably in accord with R.C. 4141.01(N) and *Nunamaker, supra,* that employees who had chosen their vacations *during* the period of the layoff were entitled to benefits reduced by any vacation pay they received. The board further held that employees who had chosen their vacations *after* the period of the layoff were entitled to full benefits, presumably because they were not voluntarily electing to accept vacation pay.

█ We next consider the propriety of the reduction in benefits.

R.C. 4141.31(A)(5) governs benefit reductions and states in relevant part:

"(A) Benefits otherwise payable for any week shall be reduced by the amount of remuneration a claimant receives with respect to such week as follows:

" * * *

"(5) Vacation pay or allowance payable under the terms of a labor-management contract or agreement, or other contract of hire, *which payments are allocated to designated weeks."* (Emphasis added.)

In this case, only those employees who had previously scheduled their vacations for the May 8 to June 2, 1991 layoff period could have their accelerated, lump sum vacation payment allocated to the layoff period. All other employees who received the accelerated lump sum vacation payment had an expectancy of receipt of those monies at times other than the layoff period.

In *Cincinnati v. Lowry* (May 10, 1989), Hamilton App. No. C–880254, unreported, 1989 WL 49143, the court there affirmed the board's allowance of unemployment benefits without a deduction for a lump sum payment of accrued vacation and compensatory time which the employer allocated to a period following a layoff.

Our conclusion in this case is that the accelerated lump sum vacation pay received by appellees at the time of layoff pursuant to the collective bargaining agreement can only be allocated to their previously selected vacation period. Thus, for those who planned vacation during the layoff period, the reduction in unemployment entitlement benefits is lawful and reasonable. See R.C. 4141.01(N). And, for those who planned vacation after the layoff period, the determination of no reduction is likewise lawful and reasonable. Hence, we conclude that these lump sum payments made to appellees constituted accelerated payments to them of their vacation pay and as such did not constitute "remuneration" within the meaning of R.C. 4141.01(M) and (N) that would defeat their entitlement to unemployment compensation.

Thus, we determine that the decision of the trial judge does not constitute an abuse of discretion and it is not unlawful, unreasonable, or against the manifest weight of evidence. Accordingly, we affirm that judgment.

*Judgment affirmed.*

HARPER, P.J., and NAHRA, J., concur.