OPINION
On March 3, 1993, appellant, Perkins Township, terminated appellee, Gregory V. Richardson, from his position as a police officer. Appellee timely filed a grievance contesting his termination. Ultimately, an arbitrator determined appellee's termination was wrongful and ordered him, "* * * reinstated with full back pay and all benefits less one week disciplinary suspension * * *." On April 26, 1994, appellee was again terminated by appellant Township. As a result, appellee filed for unemployment compensation benefits. It is uncontested that appellee performed no additional work for appellant Township after his first termination.
Appellant Administrator, Ohio Bureau of Unemployment Services, initially denied appellee's application for the reason that he did not have the statutorily required weeks of employment to qualify for benefits. This determination was later reversed on administrative appeal. However, the claim was again denied on a different ground. The hearing officer found that appellee had performed actual work for only five of the six weeks required by R.C. 4141.01(R) for him to be eligible to claim benefits. The Ohio Unemployment Compensation Board of Review disallowed a further appeal. Appellee appealed this decision to the Erie County Court of Common Pleas pursuant to R.C. 4141.28(O).
The court of common pleas reversed the Board of Review concluding that R.C. 4141.01(R) contains no provision which would require a claimant to perform actual work in a new benefit year to be eligible to claim benefits. Appellants now bring this appeal, setting forth the following single assignment of error:
 "The common pleas court erred in its decision reversing the Ohio Unemployment Compensation Review Commission's finding that claimant did not have a valid application for determination of benefit rights as there is competent, credible evidence in the record that claimant did not meet the statutory requirements."
R.C. 4141.01(R) defines an unemployment compensation benefit year and sets the conditions necessary for the consider ation of an application. The statute provides,
 "(R) `Benefit year' with respect to an individual means the fifty-two week period beginning with the first day of that week with respect to which the individual first files a valid application for determination of bene fit rights, and thereafter the fifty-two week period beginning with the first day of that week with respect to which the individual next files a valid application for determination of benefit rights after the termination of the individual's last preceding benefit year, except that the application shall not be considered valid unless the individual has had employment in six weeks that is subject to this chapter
* * * and has, since the beginning of the individual's previous benefit year, in the employment earned three times the average weekly wage determined for the previous benefit year. * * *" (Emphasis added.)
This language appellant Administrator interprets to mean that, when a claimant files an application for benefits, he or she begins a period upon which subsequent filings are based, e.g., if the first day of the week appellant files his initial application for benefits is January 1, all subsequent benefit years begin on that date. For an application to be considered, the claimant must have "had employment" for at least six weeks of the new benefit period. No party to this action contests this interpretation. However, appellant Administrator further con strues the phrase "had employment" to mean that the claimant must have actually provided personal service — actually done work — for some employer during a minimum of six weeks in the new benefit period.
With respect to appellee, the Board of Review hearing officer found that during the benefit year appellee had worked only five weeks for an employer other than appellant Township and that the arbitrator's award of "back pay" from the Township did not satisfy the actual work requirement of the statute. For this reason, the hearing officer concluded that appellee's benefit application could not be considered. It was this determination that the court of common pleas found to be,
 "* * * unlawful, unreasonable and against the manifest weight of the evidence because the referee erred when he found that the statute requires that the claimant must actually work an additional six weeks after a benefit year is established before a new benefit year is granted, and therefore erred in finding that the claimant did not actually work in the six weeks following the allowance of a prior benefit year."
The parties argue at length about the proper standard for our review, each advancing a position in favor of the test most advantageous to their respective causes. Appellants insist that, since this ultimately resolves to an evidentiary issue of whether appellant actually worked, the question is one of mani fest weight requiring only the presence of competent, credible evidence to support the hearing officer's findings. Appellee contends that the common pleas court's ruling was discretionary and ought not to be disturbed absent an abuse of discretion. Neither of these arguments is persuasive.
Clearly, the issue here is the proper interpretation of the words "had employment" in R.C. 4141.01(R). This is a matter of statutory construction which we undertake as a question of law. Miller v. Dept. of Indus. Relations (1985), 17 Ohio St.3d 226,228. Where questions of law are raised from an administrative agency, both the common pleas court and the court of appeals exercise plenary powers of review. Clemmer v. Ohio State RacingComm. (1995), 107 Ohio App.3d 594, 596.
The common pleas court concluded that R.C. 4141.01(R) contained no requirement that an individual perform actual personal service to satisfy the statute's six week employment requirement. The court found persuasive authority in Radcliffe v.Artromick International, Inc. (1987), 31 Ohio St.3d 40, in which the Ohio Supreme Court analyzed a similar requirement in R.C.4141.291(A)(2). That statute requires that a claimant who voluntarily leaves one place of employment for another may be eligible for benefits, provided he or she, "* * * commences such employment within seven calendar days, and in such employment works three weeks. * * *"
After resigning her prior position, Radcliffe was at her new job for only two weeks when she was terminated without just cause. She was, however, given an additional week of severance pay. Appellant Administrator denied her unemployment benefits on the ground that she had not "worked" for the new employer for three weeks.
In reviewing Radcliffe's case, the Supreme Court began its analysis by noting that R.C. 4141.46 requires that the unemployment compensation laws be construed liberally in favor of the applicant. Id. at 42; see, also, Vespremi v. Giles (1980),68 Ohio App.2d 91, 93. Then, applying the rules of construction, the court concluded that R.C. Chapter 4141 uses the word "work" as both "to do work" and "to be employed." The court reasoned that the purpose of the "work" requirement found in R.C. 4141.291
(A)(2) and other sections is to establish a set relationship between employer contributions to the system and remuneration paid to workers unemployed through no fault of their own. Because of this, the court held, the use of the word "work" in the statute is synonymous with "employed." The key consideration cited being whether the wages paid were subject to employer contributions into the system. Since Radcliffe's employer was required to make contributions into the system for the week she was paid in lieu of notice "* * * as a week of employment * * *" the court concluded, she satisfied the "work" requirement and was entitled to benefits.
In this matter, the common pleas court found theRadcliffe logic persuasive. Citing Shepard v. Wearever-ProctorSilex, Inc. (1991), 75 Ohio App.3d 414, 418-419, for the proposition that disability pay, vacation pay or allowance, separation pay, holiday pay, and paid absence allowances are all subject to employer contribution, the court concluded that the "back pay" awarded appellee for his wrongful termination was also subject to contributions and, therefore, qualified as "employment."
We note that in the common pleas court appellant Administrator responded to appellee's argument by attempting to distinguish Radcliffe and Shepard as applicable only to other sections of R.C. Chapter 4141, or construing language not at issue. At no time before the common pleas court, indeed nowhere in the record prior to this appeal, did appellants provide any authority for the proposition that the R.C. 4141.01(R)) phrase "had employment" demands the performance of actual work by a claimant.
On appeal, for the first time, appellants suggest that the requirement derives from the definition of "work" provided by the United States Department of Labor in a 1992 memorandum interpreting a portion of the Federal Unemployment Tax Act,26 U.S.C. § 3304(a)(7). Appellants argue that since this memorandum was released after Radcliffe, this definition supersedes that case. Appellee responds that the memorandum in question was never made a part of the record and should not now be considered. Ordinarily, a party may not assert a new legal theory for the first time before an appellate court. Kalish v. Trans WorldAirline (1977), 50 Ohio St.2d 73, syllabus; Stores Realty Co. v.Cleveland (1975), 41 Ohio St.2d 41, 43; Moats v. Metropolitan Bankof Lima (1974), 40 Ohio St.2d 47, 49-50. Nevertheless, we have reviewed the memorandum, U.I.P.L. No. 18-92, and con cluded that it fails to support appellants' position. In fact, the document states at its outset that its purpose is only to "restate" the Labor Department's 1970 position on the definition of work, not to modify it. Consequently, we must reject appellants' argument challenging the viability of the Radcliffe decision.
The most significant distinction between Radcliffe and this case is that there R.C. 4141 contains no definition of the word "work" while R.C. 4141.01 contains detailed definitions of what is and what is not "employment," each of which contain some requirement for service. "Service" however, is not defined. We also note that Radcliffe defined "work" as "employment." Even so, the Radcliffe court held that severance pay was employment andShepard, supra declared that disability pay, vacation pay, separation pay, and paid absence allowances were all subject to unemployment contribution and, therefore, qualified as "employ ment."
In this matter, the arbitrator ordered appellee compensated for the period of time he was wrongfully discharged and that he receive all benefits he was denied for that period. The requirement that all of appellee's benefits be restored would necessarily make the unpaid wages for this period subject to employer unemployment compensation contributions and, therefore, applying the Radcliffe reasoning, a period in which appellee "had employment."
Accordingly, the common pleas court determined, and we concur, that in this instance the period encompassed by the arbitration award satisfies the conditions set forth in R.C.4141.01(R) for "employment." Consequently, appellants' sole assignment of error is found not well-taken.
The decision of the Erie County Court of Common Pleas is affirmed. This matter is remanded to the Ohio Bureau of Unemployment Services for determination of whether appellee's termination was for just cause. Costs to appellants.
JUDGMENT AFFIRMED.
George M. Glasser, J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.